# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| ERIBERTO FLORES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 2:15-cv-22 |
| | ) | |
| CITY OF EAST CHICAGO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This is a civil rights case brought by Eriberto Flores under Section 1983 alleging First Amendment violations as well as wrongful arrest and excessive force. It is claimed by Mr. Flores that two of the defendants, City of East Chicago police officers Sam Maldonado and Garrick Manley, failed to intervene to prevent constitutional violations being committed by a third officer. Officers Maldonado and Manley now seek summary judgment. [DE 38.] Partial summary judgment is granted in part and denied in part. Because I find there is no evidence that Flores' protected speech was a motivating factor in his arrest, and because neither Maldonado nor Manley had a realistic opportunity to intervene to prevent the excessive force to Mr. Flores from occurring, partial summary judgment is granted as to Count I and the excessive force claim in Count II. However, because there is a triable issue of fact as to whether Maldonado and Manley failed to intervene in the alleged false arrest of Flores, summary judgment is denied as to the false arrest claim in Count II.

**Factual Background**

Flores tells me that he is a "well-known member and activist of the Concerned Citizens of East Chicago." [DE 15 at 2.] One of the issues addressed by the Concerned Citizens is residential parking. On January 16, 2016, Flores contacted the East Chicago police dispatcher to report a parking violation in front of his house. A van was illegally parked on a handicap spot which Flores and his disabled mother regularly used. [DE 38-1 at 12.] But when no officer came to Flores' residence in response to the call, he and his friend, Ed Arambula, started to drive away. [DE 43 at 2-3.] As they were departing, Flores saw two police cars in a parking lot near his house on 148th Street and Magoun Avenue, so Flores stopped to chat. [DE 38-2 at 2.]

The officers, Sam Maldonado and Garrick Manley, were parked side by side with their vehicles facing the opposite direction so they could communicate. [DE 43 at 3; DE 38-2 at 2.] Flores parked his car nearby and walked over to Maldonado and Manley; they remained seated in their cars. [DE 38-2 at 2.] Flores asked the officers about the status of his earlier call regarding the parking violation. [DE 39 at 2; DE 43 at 3; DE 38-1 at 19.] Maldonado responded with frustration: "Albert, why do you keep calling over the bullshit calls? Don't you think we have more important things to do?"and told Flores that he was "a pain in the ass." [DE 38-2 at 2.] Arambula, who had remained in Flores' car about thirty yards away, described the conversation between Flores and the Officers—which he could see, but not hear—as follows: "they were laughing[] and – or at ease, and he was waving his hands, and it was just a normal conversation from what

2

I observed." [DE 38-3 at 58.]

Flores then noticed a third police car allegedly driving the wrong way down Magoun Avenue, a one-way street, without any lights or sirens. [DE 38-2 at 2.] He saw the police vehicle brake hard, back up down the street, and pull into the parking lot where Flores, Maldonado, and Manley were talking. [*Id*.] Flores assumed the vehicle was there to observe the situation, so he turned back towards Maldonado to continue his conversation. [DE 38-1 at 19.] Suddenly and without warning, Flores felt handcuffs on his wrist and was pushed against the door of Maldonado's police car. [DE 38-2 at 2; DE 38-3 at 6.] His arms were twisted by the arresting officer behind his back and he was told to quit resisting. [DE 38-1 at 19; DE 38-3 at 6.] Flores then heard, "[You're] under arrest for disorderly conduct!" [DE 38-2 at 2] and was slammed against the trunk of the police car. [DE 38-1 at 19.]

Although Flores was initially confused and didn't know who was arresting him, he soon learned that he was being arrested by Officer Arcuri, the East Chicago police officer who had happened upon the scene. [*Id*.] Flores is well familiar with Arcuri; they're cousins. [DE 38-2 at 2.] While attempting to place Flores into the police vehicle, Arcuri caused Flores' head to hit the door jamb at least two times, the second blow causing his hat to be knocked from his head. [DE 38-2 at 2-3; DE 38-4 at 1.] Flores called out to Arambula, who was still seated in Flores' vehicle. [DE 38-2 at 2; DE 38-4 at 1.] Flores and Arambula claim that after Flores yelled, Arcuri's demeanor changed; he was evidently surprised that there was a witness (Arambula) to the events. [DE 38-2 at

3

2-3; DE 38-3 at 7.]

For the first time since the incident began, Maldonado and Manley exited their police cars. [DE 38-1 at 20; DE 38-4 at 1.] Flores asked Arambula to take his vehicle back to his house a half block away, but Arcuri ordered the vehicle to be impounded. [DE 38-2 at 3; DE 38-4 at 1.] Arcuri directed Manley to "get [Flores] out of here." [DE 38-1 at 20.]

There is a history of Flores calling the East Chicago police dispatcher to report parking ordinance violations. [DE 38-1 at 11-13; DE 38-2 at 2.] Admittedly, Flores called the police "more than a few times" about parking violations. [DE 38-1 at 21.] But Flores had difficulties getting the parking ordinance enforced in front of his house. [DE 38-1 at 11-13.]

There is also a history of Arcuri harboring negative feelings towards Flores. [DE 38-1 at 11, 16.] Flores claims that other officers told him that Arcuri wanted him arrested. [DE 38-1 at 11.] Flores also states that relatives told him Arcuri hated Flores, and he didn't consider Flores a relative. [DE 38-1 at 16.]

Flores' amended complaint [DE 15] is brought against Officers Arcuri, Maldonado and Manley, in their individual and official capacities. Flores alleges a violation of civil rights premised on First Amendment retaliation (Count I) and false arrest and excessive force (Count II). [DE 15.] Curiously, the amended complaint also includes a claim against Mark Becker, the East Chicago Chief of Police (in his individual and official capacities), although there appears to be no evidence that Becker was

4

involved in the Flores arrest in any manner.  The issue of Becker's involvement in this case can be sorted out at the Final Pretrial Conference, but for now the issue to be addressed is whether the claims against Maldonado and Manley, the two bystander officers, can proceed to trial with the case against Arcuri, who is bound for trial since he did not seek summary judgment in this matter.

## Discussion

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In response to the instant motion for summary judgment, Flores filed what he entitled "Plaintiff's Motion to Deny Defendants' Motion for Summary Judgment," which I construe as a response in opposition to the summary judgment motion.

**Count I - First Amendment Protected Conduct**

The relevant standard for a plaintiff's burden of proof on these types of claims has changed a number of times over the years.  Defendants state, "[i]n order to establish a prima facie case of First Amendment retaliation, a Plaintiff must demonstrate that (1) his conduct was Constitutionally protected; and (2) his conduct was a 'substantial factor' or 'motivating factor' in the Defendants' challenged actions." *Abrams v. Walker*, 307 F.3d 650, 654 (7th Cir. 2002) (citations omitted).  *Abrams* was

5

abrogated by *Spiegla v. Hull*, 371 F.3d 928 (7th Cir.2004), but later revived by *Fairley v. Andrews*, 578 F.3d 518 (7th Cir.2009) ("Some decisions say that a plaintiff just needs to show that his speech was a motivating factor in defendant's decision. These decisions do not survive *Gross*, which holds that unless a statute provides otherwise, demonstrating but-for causation is part of the plaintiff's burden in all suits under federal law.") (referring to *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009)). However, as later noted by the Seventh Circuit in *Surita v. Hyde*, 665 F.3d 860, 874 (7th Cir. 2011):

> Recently, in *Greene v. Doruff*, 660 F.3d 975 (7th Cir.2011), we addressed the tension in our cases between motivating-factor causation and but-for causation, clarifying that First Amendment cases are governed not by *Gross* but by *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). *Greene*, 660 F.3d at 977. We noted that *Spiegla* and *Fairley* are correct to an extent because the burden of proof relating to causation is divided between the parties in First Amendment cases. *Id.* at 979–80. To meet the prima facie burden regarding causation in a First Amendment case, a plaintiff needs to show only that the defendant's conduct was a motivating factor, i.e., a "sufficient factor," meaning when something present makes something else bound to happen. *Id.* at 978–79. The defendant can then rebut that showing, but only by establishing that his or her conduct was not a but-for or "necessary condition" of the harm, i.e., that the harm would have occurred anyway. *Id.* at 979. . . . Moreover, at the summary judgment stage the burden-shifting test is used to determine whether a plaintiff makes it to trial. Even as we stated in *Fairley*, if evidence exists upon which a reasonable jury could find but-for causation, no more is necessary to overcome a defendant's summary judgment motion.

Regardless of whether "sufficient factor" causation is applied or "but-for" causation, Flores has failed to satisfy any prima facie showing that his activist activities and

reporting of parking violations was a factor in any First Amendment restriction of rights by Maldonado or Manley.

Maldonado's statement about "why do you keep calling over the bullshit calls? Don't you think we have more important things to do?" and "You're a pain in the ass," did not restrict or diminish Flores' right to political speech, and did not deny him any rights - indeed the officers and Flores were by all accounts having a frank discussion. It is uncontroverted that Maldonado and Manley did not exert any force against Flores; their involvement in the incident was limited to Manley obeying Arcuri's order to transport Flores to the police station and Maldonado obeying Arcuri's order to arrange for the tow of Flores' vehicle. Indeed, when asked during his deposition whether he believed Arcuri beat him up because he exercised his right of free speech under the First Amendment, Flores replied, "[u]nder oath what I believe it is is because since the other officers wouldn't arrest me like he wanted them to, he came and did it himself." [DE 38-1 at 62.] Basically, Flores has produced no evidence showing Maldonado or Manley restricted his First Amendment rights at all (much less that any alleged infringement was due in at least part to his political activism or protected speech).

Moreover, it is common sense that the protected conduct "cannot be proven to motivate retaliation [] if there is no evidence that the Defendants knew of the protected [activity]." *Stagman v. Ryan*, 176 F.3d 986, 1000-01 (7th Cir. 1999) (quoting *O'Connor v. Chicago Transit Auth.*, 985 F.2d 1362, 1369-70 (7th Cir. 1993)). While Maldonado knew Flores had called before regarding parking violations, there is no evidence that

7

Maldonado or Manley knew about Flores' involvement with the Concerned Citizens of East Chicago or his community activism. Flores argues that the Chief of Police was aware of his community activities, so Maldonado and Manley must have known about it, but it is not proper to impute the Chief's knowledge to the officers. For all of these reasons, summary judgment is warranted on Count I.

**Count II - Failure to Intervene**

While Maldonado and Manley contend Flores' only argument as to them on the wrongful arrest and excessive force claims is that they failed to intervene to prevent Arcuri from using excessive force, a close read of the first amended complaint shows otherwise. Flores also alleges that Maldonado and Manley violated the Fourth Amendment by refusing or neglecting to prevent his alleged false arrest. [DE 15 at 6-7.] Here's the standard governing these claims:

> An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring.

*Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (emphasis in original) (citations omitted); *see also Sanchez v. City of Chicago*, 700 F.3d 919, 925-926 (7th Cir. 2012).

Let's turn to the first prong regarding excessive force. Even if we suppose that Arcuri used excessive force, Flores still has to show that Maldonado and Manley also

8

had a realistic opportunity to intervene. "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997). "[I]n deciding whether an officer had a realistic opportunity to intervene, courts may consider, among other factors, the length of the excessive force, the number of blows involved, and the positions of the bystander officers relative to the altercation." *Howard v. Ealing*, 876 F.Supp.2d 1056, 1072 (N.D. Ind. 2012) (citations omitted).

Here, considering all the evidence, I find that a reasonable jury could not possibly come to any conclusion other than the officers didn't have sufficient time to intervene to prevent the excessive force. It is uncontroverted that Maldonado and Manley were in their police cars when the alleged excessive force occurred. Flores' police account, which is consistent with his deposition testimony, is that while he was talking with Maldonado and Manley in their cars, "[s]uddenly without warning I felt something hit my left wrist (handcuffs) and was instantly pressed into the drivers door of the car containing the policeman I was talking with." [DE 38-2 at 2.] Arcuri then "pulled me away from the door and slammed me onto the trunk of car #78. . . . forced me towards the rear door of car #78 . . . [and] violently forced my head into the door jamb." [DE 38-2 at 2.] The witness, Arambula, had a similar account, testifying during his deposition that Arcuri "walk[ed] up to [Flores]" and "Arcuri grab [sic.] him from his

9

left side, his left hand, without provocation, without warning . . . he is grabbing from his wrist and . . . put his hand up behind his back almost touching the head. . . . [Flores] looks over and says, hey, what you doing? Complete surprise. Then this Officer Arcuri, he slams him against the police squad car." [DE 38-3 at 6.]

It seems to me that when the excessive force consists of one or two sudden blows in quick succession, in most circumstances, a bystander officer will not have a realistic opportunity to intervene to prevent the harm. Of course, every case must be decided on its own facts. But here, there is no evidence that Maldonado and Manley knew Arcuri was going to slam Flores into the police car and throw him in the back seat. And even if they did know, there is no evidence showing they had enough time to exit their vehicles, approach Arcuri while the assault was occurring, intervene to protect Flores and thereby prevent the excessive violence from occurring. While Flores argues the officers should have known Arcuri was going to do something when he drove his car the wrong way on a one-way street and then "had a very angry look on his face" [DE 43 at 10-11], I think it is unfair to assume an officer will execute an alleged false arrest and knock the suspect's head against a door jamb just because he looks agitated.

There is no evidence to suggest anything but that this was a sudden and unexpected quick incident with no signs of what was going to happen until it actually occurred. This case is similar to *Taylor v. Kveton*, in which the court found a bystander officer did not have a realistic opportunity to intervene because "the act of throwing [plaintiff] into the squad car, by his own account, was not a long drawn out process."

*Taylor v. Kveton*, 684 F.Supp. 179, 184 (N.D. Ill. 1988).

In sum, Flores completely failed to designate any evidence showing that Maldonado and Manley had a realistic opportunity to intervene—that they had enough time to act during the surprise and brief use of force by Arcuri, or the ability to prevent the harm considering their positions inside the police cars. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) ("[S]ummary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.") (internal quotation marks omitted). Accordingly, the motion for summary judgment is granted as to the excessive force claim in Count II against Maldonado and Manley.

My analysis cannot end here though. Recall that a bystander officer can also be liable under section 1983 if they had reason to know that a citizen has been unjustifiably arrested and the officer had a realistic opportunity to intervene to prevent that harm from occurring. *Yang,* 37 F.3d at 285; *see also Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1019 (7th Cir. 2006). Here, Maldonado and Manley knew that Flores was not being disorderly, and yet Officer Arcuri stopped his car and immediately arrested Flores on the bogus charge (if one believes Flores) of disorderly conduct. There is no evidence in the record that Maldonado or Manley did anything to stop the arrest and indeed they assisted at least in part by arranging the towing of Flores' vehicle and driving him to the police station. This is enough to create a triable issue of fact as to whether Maldonado and Manley had reason to know that Flores was being

11

unjustifiably arrested in their presence. In *Wayne v. Kirk*, No. 13 C 8540, 2015 WL 5950900, at *3 (N.D. Ill. Oct. 13, 2015), the court denied summary judgment on the failure to intervene in a false arrest where the record showed that bystander officers could have intervened in the false arrest as it was "undisputed that they knew plaintiff had done nothing illegal and saw [the other officers handcuff him]". Similarly, summary judgment must be denied on Count II as to the claim that Maldonado and Manley failed to intervene to prevent a false arrest because there is a triable fact issue as to whether the officers could have intervened in Arcuri's arrest of Flores.

## Conclusion

For the reasons set forth above, the motion for partial summary judgment filed by defendants Sam Maldonado and Garrick Manley [DE 38] is **GRANTED IN PART AND DENIED IN PART**. Partial summary judgment is granted as to defendants Maldonado and Manley on Count I and the excessive force claim in Count II, and those claims are **DISMISSED WITH PREJUDICE**. However, summary judgment is **DENIED** as to the false arrest claim in Count II, and that claim remains pending against Maldonado and Manley.

**SO ORDERED**.

ENTERED: January 3, 2017

                                             s/ Philip P. Simon
                                             PHILIP P. SIMON, CHIEF JUDGE
                                             UNITED STATES DISTRICT COURT